# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Total Waste Logistics LLC | : | Case No. 10-10906  (MFW) |
| Debtor; | : | |
| In re: | : | Chapter 11 |
| Conshohocken Rail, LLC | : | Case No. 10-10907  (MFW) |
| Debtor; | : | |
| In re: | : | Chapter 11 |
| Total Waste Logistics LAS, LLC | : | Case No. 10-10908  (MFW) |
| Debtor; | : | |
| In re: | : | Chapter 11 |
| TWL Finstar, LLC | : | Case No. 10-10909  (MFW) |
| Debtor. | : | |

**MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION, PURSUANT TO SECTIONS 105(a), 363, 507(a) AND 1107 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6003, FOR AUTHORIZATION TO PAY PREPETITION WAGES, COMPENSATION, EMPLOYMENT <u>BENEFITS AND RELATED RELIEF</u>**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby move (the "Motion") for an order pursuant to sections 105, 363, 507(a)(4) and 507(a)(5) of Title 11 (the "Bankruptcy Code") of the United States Code, and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (i) authorizing,

but not directing, the Debtors in the ordinary course of business, to (a) pay certain prepetition employee salaries, wages, paid time off, and other contractual compensation, as the case may be; (b) make payments for which employee payroll deductions were made; (c) pay benefits under employee benefit plans and all costs incident to the payment of such benefits (including payroll-related taxes and processing costs); (d) pay reimbursable prepetition business expenses; and (ii) directing all banks and other financial institutions to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts for payment of such prepetition employee obligations. In support of this Motion, the Debtors rely upon and incorporate by reference the *Affidavit of Guy F. Fragle in Support of Wage Motion* (the "Fragle Affidavit"). In further support, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 363, 507(a)(4) and 507(a)(5) of the Bankruptcy Code and Bankruptcy Rule 6003.

## BACKGROUND

2. On March 16, 2010 (the "Petition Date"), the Debtors, Total Waste Logistics LLC[1] ("Total"), Conshohocken Rail, LLC[2] ("CR"), Total Waste Logistics LAS, LLC[3] ("LAS") and TWL Finstar, LLC[4] ("TWL"), commenced separate voluntary cases under chapter 11 of title

---

[1] A Delaware limited liability company.
[2] A Delaware limited liability company.
[3] An Ohio limited liability company.
[4] A Delaware limited liability company.

11 of the United States Code. No trustee or committee of unsecured creditors have been appointed in these cases and the Debtors continue to operate as Debtors in possession.

3. The Debtors are commonly owned by TWL Investors, LLC (12.9%) and Zebra Property Fund I, LLC (87.1%), and together the Debtors are engaged in the landfill business, owning and operating licensed, rail-served construction and demolition debris landfills and related transfer stations and unloading facilities in both Pennsylvania and Ohio.

4. Specifically, Total operates a construction and demolition debris landfill in Negley, Ohio, LAS operates a construction and demolition debris landfill in Youngstown, Ohio, CR operates a construction and debris transfer station near Philadelphia, Pennsylvania and TWL owns a landfill in Hancock, Ohio.

5. Although the Debtors are separate companies that maintain separate books and records and bank accounts, the Debtors typically commingle their operating funds, and report their financial performance and operations on both a separate and consolidated basis.

6. Additionally, the Debtors' operations are centrally managed by a single operating manager located in Canfield, Ohio who directs daily operations at each of the Debtors' facilities.

**Events Leading To Commencement Of The Debtor's Chapter 11 Cases**

7. On or about April 13, 2007, the Debtors entered into a Credit Agreement (the "Loan Agreement") with LaSalle National Association ("LaSalle"), pursuant to which LaSalle provided the Debtors with term loans in the amount of $13,000,000.00 and revolving loans in the amount of up to $3,000,000.00 (collectively, the "Loan"). The Loan is further evidenced by a Note of the same date signed by each of the Debtors (the "Note").

8. As security for the Note, the Debtors executed mortgages and other security documents granting LaSalle security interests in substantially all of the assets of the Debtors including the Debtors' real property in Ohio and Pennsylvania.

9. Bank of America, N.A. ("Lender"), is the successor by merger to LaSalle.

10. As a result of the downturn in the economy and the overall slow in construction and demolition, need for the Debtors' services drastically fell, causing the Lender to assert defaults under the Loan.

11. On September 29, 2008, Lender notified Debtors that Debtors were in default under the Loan Agreement.

12. On December 24, 2008, the Debtors executed a forbearance agreement (the "Forbearance Agreement") with Lender, which was subsequently amended and restated on May 29, 2009, extending the term of the forbearance through June 30, 2009 (the "Forbearance Period").

13. Since the termination of the Forbearance Period, Lender has initiated actions seeking to foreclose on the Debtors' real property.

14. As a result, the Debtors initiated the above-captioned chapter 11 cases.

## RELIEF REQUESTED

15. The maintenance of employee morale and preservation of the Debtors' work force during the course of these chapter 11 bankruptcy cases is critical. Moreover, it is critical to minimize the personal hardship of the Debtors' employees if their employee-related obligations are not paid when due. Accordingly, the Debtors have filed this Motion requesting an order of the Court pursuant to sections 105, 363, 507(a)(4) and 507(a)(5) of Title 11 (the "Bankruptcy Code") of the United States Code, and Rule 6003 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") for entry of an order (i) authorizing, but not directing, the Debtors in the ordinary course of business, to (a) pay certain prepetition employee salaries, wages, paid time off, and other contractual compensation, as the case may be; (b) make payments for which employee payroll deductions were made; (c) pay benefits under employee benefit plans and all costs incident to the payment of such benefits (including payroll-related taxes and processing costs); (d) pay reimbursable prepetition business expenses; and (ii) directing all banks and other financial institutions to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts for payment of such prepetition employee obligations.

16. Lender has consented to the relief requested in this Wage Motion.

**BASIS FOR RELIEF**

**A. Wages, Salaries, and Commissions**

17. The Debtors employ 29 individuals (collectively, the "Employees") at their facilities in Canfield, Girard, and Negley, Ohio, and Conshohocken, Pennsylvania, comprised of approximately 20 hourly employees (the "Hourly Employees") and 9 salaried employees (the "Salaried Employees").

18. As of the Petition Date, the Employees were owed or had accrued entitlements to various sums for, *inter alia*,: (a) wages, (b) salaries, (c) vacation pay, sick leave pay, holiday pay ("Paid Time Off") and (d) miscellaneous payroll items. Both the Hourly Employees and Salaried Employees are paid every other Friday, one week in arrears, with the next payroll scheduled for March 19, 2010.[5]

19. The average biweekly payroll for the Employees is approximately $44,000 (inclusive of payroll taxes).

---

[5] The payroll scheduled for March 19, 2010 will cover the two week period from February 28 through March 13, 2010. The payroll scheduled for April 2, 2010 will cover the two week period from March 14, 2010 through March 27, 2010.

20. The Debtors estimate that, as of March 17, 2010, the total accrued but unpaid prepetition payroll for the Employees total $40,687.67, including payroll taxes, for the pay period February 28, 2010 through March 13, 2010. The Debtors estimate that, as of March 17, 2010, the total accrued but unpaid prepetition payroll for the Employees total $13,200, including payroll taxes, for the pay period March 14 through March 27, 2010.

21. The Debtors' payroll functions are partially administered internally, and in conjunction with ADP. Funds are transferred from the Debtors' operating accounts to the Debtors' payroll accounts. ADP then issues the payroll checks. Employee's voluntary withholdings for the 401(k) Plan (as defined below) are automatically withdrawn from the payroll account by Principal Financial.

22. Pursuant to this Motion, the Debtors seek to pay the outstanding amounts owed as of the Petition Date for accrued and unpaid wages and salaries (the "Prepetition Compensation"), including amounts that the Debtors are required by law to withhold from Employee payroll checks in connection with federal, state and local income taxes, garnishment contributions, social security and Medicare taxes, up to the amount of $10,950.[6]

**B.    Other Compensation: Paid Time Off and Reimbursable Business Expenses**

23. The Debtors offers their Employees other forms of compensation, including Paid Time Off and reimbursement of certain business expenses ("Additional Compensation"). These forms of compensation are usual, customary and necessary if the Debtors are to retain qualified employees during the course of these chapter 11 cases.

24. **Vacation Time.** Employees of the Debtors accrue paid Vacation Time during the year that can be used or cashed out if unused at the end of the year. Prior to the Petition Date,

---

[6] By this Motion, the Debtors only seek authority to make payment to such Employees up to the amount of $10,950 on account of prepetition wages, salaries and commissions.

6

the Employees collectively accrued approximately $29,031 of Vacation Time. The Debtors intend to honor their policies by allowing the Employees to use their Vacation Time in the ordinary course during the postpetition period. The Debtors anticipate that their Employees will use their Vacation Time in the ordinary course of business without resulting in material cash flow requirements beyond the Debtors' normal payroll obligations.

25. By this Motion, the Debtors seek authority to honor in the ordinary course of business those liabilities that arose under the Debtors' Vacation Time policies or practices, except as otherwise set forth herein.

26. **Reimbursable Business Expenses.** In the ordinary course of its business, certain of the Debtors' Employees incur a variety of business expenses (collectively, the "Reimbursable Business Expenses") which, consistent with ordinary practice, are reimbursable. Such expenses are typically paid on a rolling basis as processed. It would be inequitable, cause an undue hardship, and adversely affect the morale and loyalty of such Employees if they were required to bear such expenses, some of which may be substantial and all of which were incurred on behalf of the Debtors in the expectation that they would be reimbursed promptly. Based upon the expense requests in the Debtors' system, and the Debtors' best estimate of additional outstanding expense requests, the Debtors estimate that less than $1,000 is owed as Reimbursable Business Expenses to certain of its Employees. By this Motion, the Debtors seek authority to pay all prepetition Reimbursable Expenses in the ordinary course of business, including those incurred prior to the Petition Date.

C. **Employee Benefit Plans**

27. Prior to the Petition Date, the Debtor provided its Employees with various benefits including, without limitation, health and dental insurance ("Medical Plans") and

miscellaneous other benefits, including workers compensation (collectively, the "Employee Benefits").[7]

28.     **Workers' Compensation.**  The Debtors provide workers' compensation benefits to all of their Employees.  The Debtors pay premiums for workers' compensation insurance in arrears.  Premiums remaining due for the period July 1, 2009 through December 31, 2009 total $11,000.  That amount, which is due in May 2010, is expected to be funded by a credit of $11,000 on account with the Debtors' workers' compensation carrier.  The Debtors estimate that the premium for workers' compensation insurance for the period January 1, 2010 through June 30, 2010, which premium will become due and payable in August 2010, will total approximately $17,000.  By this Motion, the Debtors request authority to continue to provide such benefits in the ordinary course of business and pay the premiums in full.

29.     The Employee Benefits are integral and important parts of each Employee's total compensation package.  Interruption of such Employee Benefits would seriously undermine the Employees' morale, cause them great personal hardship, jeopardize the Debtors' relationships with their Employees at a time when the dedication and cooperation with the Employees is absolutely critical.  Therefore, the continuation of the Debtors' ordinary course practices in connection with the Employee Benefits is imperative.

**D.     Social Security, Income Tax and Other Withholdings**

30.     The Debtors routinely withhold certain amounts from Employee paychecks in connection with amounts that the Debtors are required to transmit to third parties, which may include social security, FICA, federal and state income taxes, and similar obligations.  The Debtors believe that any such funds that have been withheld, but remain in the Debtors'

---

[7] All premiums due under the Debtors' medical and dental plans for periods prior to the Petition Date have been paid by the Debtors.

possession as of the Petition Date would constitute moneys held in trust. Thus, the Debtors believe that they have the authority to direct such funds to the appropriate parties in the ordinary course of business.

**E.     Direction to Banks**

31.     In addition, the Debtors seek an order authorizing and directing the Debtors' banks to receive, process, honor, and pay all of the Debtors' prepetition checks and fund transfers on account of any of the prepetition employee obligations, and prohibiting Debtors' banks from placing holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for prepetition employee obligations.

## BASIS FOR RELIEF

32.     By this Motion, the Debtors seek authority, under sections 105, 363, 507(a)(4), and 507(a)(5) of the Bankruptcy Code, to pay in the ordinary course of business, various employee-related prepetition obligations of the Debtors' to, or for the benefit of, the Employees. The Debtors' obligations to their Employees (the "Prepetition Employee Obligations") may include, but are not limited to, the following: (a) unpaid prepetition wages, salaries, and paid time off earned prior to the Petition Date; (b) certain deductions from the Employees' paychecks to make payments on behalf of the Employees for, by way of example, taxes, alimony, garnishments and support payments, and other similar programs; (c) reimbursable business expenses incurred before the Petition Date; and (d) employee benefit claims arising before the Petition Date (including, but not limited to, health and dental claims and miscellaneous other benefits.

33. The Debtors believe that payment of these Prepetition Employee Obligations is justified under section 105 of the Bankruptcy Code and the "necessity of payment" doctrine, and that a majority of the amounts are entitled to priority under section 507.

34. Section 507(a)(4) of the Bankruptcy Code gives priority up to $10,950 per individual for prepetition claims for wages, salaries, vacation and sick leave, earned within ninety (90) days before filing up to $10,950 per employee. Moreover, Section 507(a)(5) of the Bankruptcy Code provides that claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $10,950, less any amounts paid pursuant to section 507(a)(4) of the Bankruptcy Code.

35. The Debtors submit that all Employees will be entitled to prepetition compensation, deductions, withholdings and benefits of less than $10,950. Accordingly, the Debtors request authority to pay all prepetition compensation, deductions, withholdings and benefits as and when such amounts become payable. In addition, the Debtors request authority to pay all costs and expenses incident to prepetition compensation, deductions, benefits and withholdings, including, without limitation, related processing costs.

36. The Debtors do not presently seek to alter their compensation, vacation and other benefit policies, except as may otherwise be set forth herein. This Motion is intended only to permit the Debtors to make payments consistent with those policies to the extent that, without the benefit of an order approving this Motion, such payments would be inconsistent with the Bankruptcy Code.

37. To the extent that the Prepetition Employee Obligations are not entitled to priority status, their payment is justified under the "doctrine of necessity." *See e.g., In re Lehigh & New*

*England Ry. Co.*, 657 F.2d. 570, 581 (3d Cir. 1981) (necessity of payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made out of corpus."); *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (bankruptcy court may exercise equity powers under section 105(a) to authorize payment of prepetition wage claims since such payment is necessary to "permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionally."). *See also Pension Benefit Guaranty Corp. v. Sharon Steel Corp.* (*In re Sharon Steel Corp.*), 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993) (payment of prepetition wages permissible to prevent serious threat to chapter 11 process); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (same). Section 105 of the Bankruptcy Code expressly provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).Thus, in *In re Ionosphere Clubs, Incorporated*, the court, relying on its equitable powers under Bankruptcy Code section 105(a), permitted Eastern Air Lines, Inc. ("EAL") to pay its current employees prepetition wages, salaries, medical benefits, and routine business expense claims. *Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) *citing* H.R. REP. NO. 95-595, at 16 (1977)). The *Ionosphere Clubs* court further determined that these payments to or for the benefit of EAL's current employees fell under the "necessity of payment" rule, first enunciated by the United States Supreme Court in *Miltenberger v. Logansport, C. & S.W.R. Company*, under which a bankruptcy court will permit a reorganizing debtor to make postpetition payments on prepetition claims when payment is necessary to effectuate a successful reorganization. *Miltenberger v. Logansport, C. & S.W.R. Co.* 106 U.S. 286, 1 S.Ct. 140 (1882).

38. Other courts have also permitted a debtor in possession to pay prepetition wage, salary, expense, and benefit claims on the grounds that payment of such prepetition claims was necessary to effectuate a successful reorganization. *See e.g., Chateaugay Corp.*, 80 B.R. at 286-88 (approving bankruptcy court order authorizing debtor to pay certain prepetition wages, salaries, employee reimbursement expenses and benefits, including payments on workers' compensation claims); *Gulf Air, Inc.*, 112 B.R. 152 (same); *In re Tweeter Home Entm't Group, Inc.*, Case No. 07-10787 (PJW) (Bankr. D. Del. June 11, 2007).

39. Here, the Debtors submit that they must pay the Prepetition Employee Obligations to preserve Employee morale and to ensure the smooth and uninterrupted operation of their businesses.

40. The Debtors submit, moreover, that granting this Motion is consistent with the policies of the Bankruptcy Code, and is therefore authorized by section 105 of the statute. Few employees will continue working for an entity that has filed a bankruptcy petition without providing assurances that its employees will be timely paid. The most critical employees tend to be those most able to secure new positions. Thus, unless a debtor can provide employees at least with adequate assurances of timely payment, reorganization will be available only to debtors who do not rely on a skilled workforce. Further, if prepetition benefit, compensation, and reimbursement amounts are not received by the Employees in the ordinary course, many will suffer extreme personal hardship and in many cases will be unable to pay their basic living expenses. Such a result obviously would destroy the Employees' morale and result in unmanageable employee turnover. The Debtors submit that any significant deterioration in morale at this time will substantially and adversely affect the Debtors' operations, thereby resulting in immediate and irreparable harm to Debtors and their estates.

41. The requested relief will also reduce significantly the administrative burden which might otherwise be imposed in this chapter 11 case. For the Debtors to identify whether and to what extent each individual employee holds a priority or general unsecured claim for employee benefits, and to modify benefit policies to enforce these distinctions, would impose additional burdens of administration and expense that seem unwarranted under the circumstances. Further, the Debtors believe that the amounts requested to be paid to the Employees pursuant to this Motion, in light of the importance and necessity of retaining the Employees' services and preserving morale, are reasonable compared with the difficulties and losses the Debtors likely will suffer if those amounts are not paid. Finally, such payments, if authorized, will not prejudice the other creditors in this case because most of the Employees' claims are priority claims minimizing the impact, if any, that such payments will have on the distribution of assets of the Debtors' estates to general unsecured creditors. Accordingly, the Debtors seek authorization to pay the Prepetition Employee Obligations (and maintain the underlying employee benefits) all in accordance with the policies, plans, and programs that were in place prior to the Petition Date.

42. Such action, if authorized, however, should not be deemed to be an assumption or adoption of any agreement or policy providing such coverage. The Debtors are currently reviewing these matters and reserves its rights with respect to cessation or continuation of these programs in the future, and the assumption or rejection of any executory contracts.

43. Relief similar to the relief requested herein has been granted by courts in this district and elsewhere in other chapter 11 cases. *See, e.g. In re Tweeter Home Entm't Group, Inc.*, Case No. 07-10787 (PJW) (Bankr. D. Del. June 11, 2007); *In re Radnor Holdings Corp.*,

Case No. 06-10894 (PJW) (Bankr. D. Del. Aug. 21, 2006); *see also In re Plastech Engineered Prods., Inc.*, 08-42417 (PJS) (Bankr. E.D. Mich. Feb. 17, 2008).

44. For all of the reasons previously set forth, the Debtors submit that the payment of the Prepetition Employee Obligations and the continuation of employment policies is necessary to the success of the Debtors' bankruptcy proceedings, and thus cause exists for granting the relief requested herein.

## SATISFACTION OF BANKRUPTCY RULE 6003

45. Pursuant to Rule 6003 of the Bankruptcy Rules, the Court may grant a request of a debtor to pay all or a part of a pre-petition claim in the first twenty (20) days of a case only if that relief is necessary to avoid immediate and irreparable injury. For the reasons set forth herein, the Debtors submit that they have satisfied the requirements of Rule 6003 with respect to the relief requested in this Motion.

## NOTICE

46. No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been given to: (a) the United States Trustee for the District of Delaware, (b) the Debtors' twenty largest unsecured creditors; and (c) counsel to Bank of America. In light of the nature of the relief requested herein, Debtors submit that no other or further notice is required.

47. No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request entry of an Order substantially in the form annexed hereto, granting the relief requested in the Motion, and such other relief as may be just and proper.

Dated: March 18, 2010
      Wilmington, DE

/s/ Michael J. Barrie
Michael J. Barrie (DE Bar No. 4684)
Jennifer R. Hoover (DE Bar No. 5111)
BENESCH, FRIEDLANDER, COPAN
   & ARONOFF LLP
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7010 (Telephone)
(302) 442-7012 (Facsimile)

- and -

Robert Somma, Esq. (*pro hac vice* pending)
Laura A. Otenti, Esq. (*pro hac vice* pending)
POSTERNAK BLANKSTEIN & LUND LLP
The Prudential Tower
800 Boylston Street
Boston, MA 02199
617.973.6126 (Telephone)
617.722.4985 (Facsimile)

*Proposed Counsel for the Debtors
and Debtors-in-Possession*